UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
ALVIN BLYER, Regional Director of Region
29 of the National Labor Relations Board, for
and on behalf of the NATIONAL LABOR
RELATIONS BOARD,

    Petitioner,

        -against-

ONE STOP KOSHER SUPERMARKET,
INC.,

    Respondent.
---------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 10-CV-1956 (FB) (VVP)

*Appearances:*
*For the Petitioner:*
JAMES P. KEARNS, ESQ.
National Labor Relations Board, Region 29
Two MetroTech Center, Suite 5100
Brooklyn, NY 11201

*For the Respondent:*
JEFFREY A. MEYER, ESQ.
Kaufman Dolowich Voluck & Gonzo LLP
135 Crossways Park Drive, Suite 201
Woodbury, NY 11797

**BLOCK, Senior District Judge:**

        Alvin Blyer, as Regional Director of Region 29 of the National Labor Relations Board ("NLRB"), petitions, pursuant to 29 U.S.C. § 160(j), for interim relief pending the NLRB's adjudication of an unfair labor practices complaint against One Stop Kosher Supermarket, Inc. ("One Stop"). Specifically, the Regional Director seeks an order requiring One Stop to bargain with Local 338, Retail, Wholesale and Department Store Union, United Food and Commercial Workers ("the Union"), and to provide the Union with information relevant to the bargaining process. For the following reasons, the petition is granted.

# I

The underlying facts are straightforward and undisputed. On May 27, 2009, the Union and David Ganz ("Ganz"), One Stop's labor consultant, executed an agreement whereby One Stop would recognize the Union as its employees' designated collective-bargaining representative.[1] The Union informally requested bargaining throughout the summer of 2009. On September 11, 2009, it formalized its request in writing and, in addition, asked One Stop to turn over certain information relevant to the bargaining process. Receiving no response, the Union filed a charge with the NLRB on October 20, 2009.

On January 26, 2010, the NLRB issued a complaint and referred the matter to an administrative law judge ("ALJ"), who held an evidentiary hearing on March 23 and 24, 2010. In the administrative proceeding, One Stop took the position that the recognition agreement was not binding because (1) Ganz was not authorized to execute it on One Stop's behalf, (2) it was a "sham" agreement, never intended to be put into effect, and (3) the Union did not verify that it had the support of a majority of One Stop's employees.

On April 30, 2010, the Regional Director filed the present petition for temporary relief. On May 7th, the ALJ issued a decision finding that the recognition agreement was binding, and recommending that the NLRB order One Stop to bargain with the Union and to provide it with the requested information. To date, the NLRB has taken no action on the ALJ's recommendation.[2]

---

[1] To be precise, the Union claimed to represent "[a]ll full-time and regular part-time clerks and delivery persons, employed by [One Stop] at its Brooklyn facility, but excluding all cashiers, clericals, managers, guards and supervisors." Pet'r's Mem. of Law 3. For simplicity's sake, the Court refers to this bargaining unit as "employees."

[2] Between January 1, 2008, and April 5, 2010, three seats on the five-member NLRB were vacant. *See, e.g.*, Peter Whoriskey & Sonja Ryst, *National Labor Relations Board Decisions Were Illegal, Supreme Court Rules*, Wash. Post, June 18, 2010, at A12 (noting NLRB's attempt "to operate with only two of its five seats filled because of gridlock over presidential

**II**

Judicial review of NLRB matters is generally vested in the circuit courts, *see* 29 U.S.C. § 160(f); however, a district court has limited jurisdiction to grant "appropriate temporary relief" "as it deems just and proper." *Id.* § 160(j). The Second Circuit has adopted a two-part test for determining whether such relief is appropriate:

> First, the [district] court must find reasonable cause to believe that unfair labor practices have been committed. Second, the court must find that the requested relief is just and proper.

*Hoffman v. Inn Credible Caterers, Ltd.*, 247 F.3d 360, 364-65 (2d Cir. 2001).

Although "general equitable criteria apply to grants of injunctive relief under section 10(j)," *Kaynard v. Mego Corp.*, 633 F.2d 1026, 1033 (2d Cir. 1980) (citing *McLeod v. General Elec. Co.*, 366 F.2d 847 (2d Cir. 1966), *vacated as moot*, 385 U.S. 533 (1967)), the test for § 160(j) relief differs in important respects from the standard formulation for a preliminary injunction.[3] Most obviously, "reasonable cause to believe that unfair labor practices have been committed" is a more forgiving standard than "likelihood of success on the merits." Less obviously, § 160(j) does not

---

nominees"). The Supreme Court recently held that the NLRB lacked authority to act in the absence of a quorum of at least three members, thus vitiating nearly 600 decisions issued by the two-member board. *See New Process Steel, L.P. v. NLRB*, 560 U.S. ___, 2010 WL 2400089 (June 17, 2010). Thanks to two recess appointments by the President, the NLRB has had four members since April 2010; in addition to its usual backlog, it must now also contend with the consequences of *New Process Steel*.

[3]In 2008, the Supreme Court gave the standard formulation as follows: "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Defense Council*, 129 S. Ct. 365, 374 (2008). More recently, the Second Circuit held that *Winter* did not foreclose the alternative route to obtaining a preliminary injunction by showing irreparable harm and "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010).

impose a more stringent burden for obtaining a mandatory (as opposed to prohibitory) injunction. *Cf. Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995) ("A mandatory injunction . . . is said to alter the status quo by commanding some positive act. . . . [A] mandatory injunction should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." (citations and internal quotation marks omitted)). Indeed, the relief requested here – an order requiring an employer to bargain with a union pending a final determination by the NLRB that it is required to do so – is clearly mandatory in nature, but is frequently granted without any alteration to the usual § 160(j) standards. *See, e.g., Inn Credible Caterers*, 247 F.3d at 364.

Nevertheless, "[i]t is black-letter law that the issuance of an injunction is an extraordinary remedy," and § 160(j) "in no way changed the extraordinary nature of the injunctive remedy." *McLeod*, 366 F.2d at 849. Following this precept, the Second Circuit has urged district courts "to give serious consideration to the insertion of appropriate time limits in [§ 160(j)] injunctions." *Mego Corp.*, 633 F.2d at 1035. Such caution is necessary for two reasons. First, "the issuance of a [§ 160(j)] injunction diminishes whatever incentives for speed the General Counsel and the charging union might otherwise have had, since a considerable portion of the desired relief has already been obtained." *Id.* Second, it ensures that the district court is not overstepping its limited authority to provide only *temporary* relief. *See id.* ("Moreover, in the interval between the grant of an injunction and final adjudication by the Board, the rights of the parties will have been determined by a court rather than by the expert agency established by Congress.").

### III

Thus, the Court must undertake a three-part inquiry: (A) Is there reasonable cause to believe that One Stop's refusal to bargain with the Union constitutes an unfair labor practice? (B) If

4

so, is an interim order requiring bargaining "just and proper"? (C) If so, what limits on such an order, if any, are necessary to discourage dilatory conduct and respect NLRB's right to adjudicate the parties' dispute?

**A. Reasonable Cause**

With respect to the first issue, it is not the district court's role "to make a final determination whether the conduct in question constitutes an unfair labor practice." *Inn Credible Caterers*, 247 F.3d at 365. Thus,"[a]ppropriate deference must be shown to the judgment of the NLRB, and a district court should decline to grant relief only if convinced that the NLRB's legal or factual theories are fatally flawed." *Silverman v. Major League Baseball Player Relations Comm.*, 67 F.3d 1054, 1059 (2d Cir. 1995).

Given that deferential standard, the Court has no difficulty concluding that the Regional Director has established reasonable cause to believe that One Stop is committing an unfair labor practice by refusing to recognize and bargain with the Union. The Regional Director's legal position -- that an employer may be bound by a voluntary recognition agreement, even in the absence of an election or other confirmation of the union's majority support -- is hardly novel. *See Royal Coach Lines, Inc. v. NLRB*, 838 F.2d 47, 51 (2d Cir. 1988) (union voluntarily recognized by employer presumptively has majority support). Similarly, as demonstrated by the ALJ's resolution of the dispute regarding Ganz's authority, the Regional Director's position is amply supported on the facts. Although the ALJ's decision is still subject to review by the NLRB (and, if challenged, the Second Circuit), it is sufficient to show reasonable cause to believe that One Stop will eventually be obligated to bargain with the Union.

**B. "Just and Proper"**

Temporary injunctive relief under § 160(j) is "just and proper" when it is "necessary

to prevent irreparable harm or to preserve the status quo." *Inn Credible Caterers*, 247 F.3d at 368. "[T]he appropriate status quo in need of preservation is that which was in existence before the unfair labor practice occurred." *Id.* at 369.

Because there was no prior bargaining relationship between One Stop and the Union, the status quo in existence when One Stop refused to bargain with the Union was a non-unionized workforce. An interim bargaining order is not necessary to preserve that status quo. *Cf. id.* (successor employer refused to bargain with union recognized by predecessor and began hiring non-union workforce). Thus, the case hinges on the risk of irreparable harm.

The Regional Director posits that denial of an interim bargaining order will result in two forms of irreparable harm: (1) that One Stop's intransigence will "predictably erode employee support for the Union and impair or undermine any future bargaining," Pet'r's Mem. of Law 13; and (2) that delay will cause the "loss of the benefits of collective bargaining pending the Board's decision." *Id.*[4]

With respect to the first harm, the Second Circuit has recognized, on several occasions, that loss of union bargaining strength constitutes irreparable harm. *See Inn Credible Caterers*, 247 F.3d at 368-70; *Mego Corp.*, 633 F.2d at 1034-35; *Seeler v. Trading Port, Inc.*, 517 F.3d 33, 37-38 (2d Cir. 1975). In those cases, however, the employer was actively engaged in some form of anti-union campaign during the administrative proceedings. *See Inn Credible Caterers*, 247 F.3d at 369 (hiring anti-union workforce); *Kaynard*, 633 F.2d at 1034 (recognizing rival union); *Seeler*, 517 F.2d at 36 (threatening to fire pro-union employees, reward anti-union employees and

---

[4]The Regional Director also argues that the lack of an interim bargaining order will "threaten the effectiveness of the Board's final remedy." Pet'r's Mem. of Law 12 (citing *Seeler v. Trading Port, Inc.*, 517 F.3d 33, 37-38 (2d Cir. 1975)). Since, however, the NLRB's remedy, if awarded, will be to order One Stop to bargain with the Union, its effectiveness is subsumed within the two forms of irreparable harm identified in the text.

close plant). The Second Circuit quite sensibly concluded that such conduct might damage union support to the point that a bargaining order would be ineffectual. Here, however, the Regional Director has offered no evidence that One Stop is engaged in any such conduct. Thus, the form of harm, while irreparable in the abstract, is too speculative to warrant relief. *See Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (to warrant injunctive relief, irreparable harm must be "neither remote nor speculative, but actual and imminent").

By contrast, the second type of harm – loss of the right to collective bargaining – is very real: One Stop has stated on the record that it will not bargain with the Union unless ordered to do so. Thus, this form of harm will undisputedly be visited upon the Union unless the Court grants the injunction. The question then becomes whether such harm is irreparable. As an apparent matter of first impression, the Court concludes that it is.

If the NLRB adopts the ALJ's recommendation and upholds the Union's complaint, it will, in essence, be saying that One Stop has been required to bargain with the Union since September 2009, at the latest. It can *partially* remedy such a violation by ordering bargaining going forward. However, such a remedy will be incomplete because it will not provide whatever benefits One Stop's employees would have gained from collective bargaining between September 2009 and the time the NLRB's decision becomes final and enforceable. It is beyond cavil that one of the purposes of an interim bargaining order is to protect "the policy of the [National Labor Relations] Act in favor of the free selection of collective bargaining representatives." *Seeler*, 517 F.2d at 39.

One Stop argues that such harm is not irreparable because the Union may negotiate retroactive application of the eventual agreement should the NLRB order bargaining. Significantly, however, One Stop does not guarantee that it will *accede* in such a demand, and the NLRB lacks authority to impose it unilaterally. *See H.K. Porter Co. v. NLRB*, 397 U.S. 99, 102 (1970) ("[The
7

NLRB] is without power to compel a company or a union to agree to any substantive contractual provision of a collective-bargaining agreement."). If bargaining took place now, there would be no need to negotiate retroactivity. Thus, the Court concludes that the loss of collective bargaining rights is both real and irreparable.

To be sure, an interim bargaining order will require One Stop to spend resources and turn over confidential information. The Court agrees that at least the loss of confidentiality would constitute some irreparable harm to One Stop. Thus, there is a risk of irreparable harm to *someone* whether the Court grants or denies interim relief. Because, however, the Court is satisfied that the Regional Director will likely prevail, the likelihood of irreparable harm to the Union if the relief is denied is far greater than the likelihood of irreparable harm to One Stop if it is granted.

## C. Time Limitations

Although the Court has concluded that the Regional Director has satisfied both prongs of the test for § 160(j) relief, it is mindful that the concerns raised by the Second Circuit in *Mego Corp.* are also present here. Since bargaining is precisely what the Regional Director ultimately seeks on behalf of the Union, court-ordered bargaining would decrease the NLRB's incentive to act with dispatch.[5] It might also easily become, as a practical matter, permanent relief if it were to result in a collective bargaining agreement before the NLRB renders its decision. For these reasons, an unrestricted bargaining order would go beyond the interim relief authorized by § 160(j).

---

[5]In a similar vein, One Stop argues that the Regional Director's delay militates against granting the requested relief. The Court concludes, however, that the three months between the filing of the Union's charge and the issuance of the NLRB's complaint was not an unreasonable amount of time to investigate the charge and determine if a voluntary settlement was possible. Similarly, the three months between the issuance of the complaint and the filing of the present petition was not unreasonable; as the Second Circuit has noted, the NLRB "does not take lightly the commencement of a [§ 160(j)] action." *Kaynard v. MMIC, Inc.*, 734 F.2d 950, 954 (2d Cir. 1984) (rejecting argument that two-month delay negated need for interim relief).

The solution adopted in *Mego Corp.* – time limits – made sense in that case because of the nature of the injunction. The district court had enjoined the employer from recognizing, and implementing a collective bargaining agreement negotiated with, a rival union. *See* 633 F.2d at 1028. The Second Circuit affirmed, but modified the injunction to automatically terminate if the administrative proceedings were not completed by a date certain. *See id.* at 1035. Given the prohibitory nature of the injunction, the time limits confined its effect to providing interim relief.

Such is not the case here. A time limit would not necessarily cabin the effect of an interim bargaining order because the bargaining might culminate in an agreement before the deadline. On the other hand, it might encourage One Stop to engage in dilatory conduct to avoid reaching an agreement prior to that date.

Therefore, in lieu of time limits, the Court will order interim bargaining, but with the proviso that no agreement be implemented until the NLRB renders its decision. In the Court's view, this proviso strikes an appropriate balance: By requiring One Stop only to *begin* the bargaining process, the Court's order leaves final adjudication of the employees' rights to the benefits of collective bargaining to the NLRB, yet encourages it to act as promptly as possible.

## IV

For the foregoing reasons, the Regional Director's petition for interim relief under § 160(j) is granted. Accordingly, One Stop, its officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all persons acting in concert or participation with them, shall:

1. Within five days of the date of this Memorandum and Order, provide the Union with the information requested in its letter of September 11, 2009;

2. Within five days of the date of this Memorandum and Order, provide the Union with proposed dates for collective bargaining negotiations; and

3. Upon the establishment of a schedule for negotiations, meet and bargain with

9

the Union; provided that any agreement reached pursuant to such negotiations shall not be implemented until the NLRB renders its decision in this matter.

To effectuate the foregoing provisions, One Stop shall:

1. Post copies of this Memorandum and Order at all locations where notices to employees are customarily posted, maintain such notices free from obstruction or defacement, and grant reasonable access to agents of the NLRB to monitor compliance with the posting requirement; and

2. Within twenty days of the date of this Memorandum and Order, file and serve a sworn affidavit from a responsible official attesting, with particularity, the steps it has taken to comply with the Memorandum and Order, including a description of the exact locations of the required posting.

All of the foregoing provisions shall expire upon the completion of the NLRB proceeding, including, if sought, judicial review.

**SO ORDERED.**

_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
June 29, 2010